UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
THE CITY OF NEW YORK, SCOTT V.
PAULINO, and DRAGONETTI
BROTHERS LANDSCAPING NURSERY
AND TREE CARE, INC.,

                      Plaintiffs,                    **MEMORANDUM & ORDER**

                     - against -                    13 CV 4693 (RJD) (JO)

WESTERN HERITAGE INSURANCE
COMPANY,

                      Defendant.
------------------------------------------------------------ x
DEARIE, District Judge

      In this declaratory judgment action, the City of New York (the "City"), Dragonetti Brothers Landscaping Nursery and Tree Care, Inc. ("Dragonetti"), and Scott V. Paolino ("Paolino")[1] seek an order that they are entitled to a defense and indemnity under a commercial general liability policy insured by Western Heritage Insurance Company ("Western Heritage"), with respect to an underlying automobile accident. The parties have cross-moved for summary judgment on whether the general liability policy covers the underlying automobile accident, and whether Western Heritage validly disclaimed coverage. For the reasons set forth below, Western Heritage's motion for summary judgment is granted in part.

## BACKGROUND

      This declaratory judgment action arises out of an automobile accident that occurred on May 13, 2010 between an automobile that was owned by non-party John Battocchio ("Battocchio") and a dump truck owned by Dragonetti. Battocchio was driving northbound on

---

[1] While the caption on the complaint spells the plaintiff's name "Paulino," the parties' briefs and the supporting factual materials all spell his name "Paolino," and therefore this opinion uses that spelling.

the Hutchinson River Parkway near the Westchester Avenue exit in the Bronx when his vehicle collided with the rear of the dump truck, which was being driven by Paolino. Battocchio died as a result of the accident, and his estate subsequently commenced an action on July 15, 2011 against Dragonetti, the City and Paolino captioned Estate of John W. Battocchio v. Scott V. Paolino et al., Index No. 306330/11 (N.Y. Sup. Ct.). The complaint in that action alleges that Paolino, who was acting as an employee of Dragonetti and as an agent of the City, "was operating the . . . dump truck . . . in a negligent, dangerous, [and] unreasonably unsafe manner." The complaint also alleges that Dragonetti and the City "were reckless, careless and negligent in the maintenance, hiring, operation, management and control of the landscaping service performed on . . . May 13, 2010" and in "the operation, supervision, maintenance, management and control of the Dragonetti motor vehicle operated by Scott Paolino." The Battocchio action remains pending.

Prior to the accident, Western Heritage issued a commercial general liability policy to Dragonetti in effect for the policy period February 15, 2010 through February 15, 2011, with limits of $1 million per occurrence and a $2 million general aggregate, subject to a $5,000 per claim deductible. Pursuant to section II(2)(a) of the policy, Paolino as an employee of Dragonetti is an insured under the policy. Additionally, in accordance with a September 23, 2009 contract with the New York City Department of Parks & Recreation Capital Projects Division, Dragonetti contends, as further discussed below, that the City is an additional insured under the policy.

The policy provides in section I(1)(a) that Western Heritage "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . . However, [Western Heritage] will have no duty to

defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." As set forth in section I(2)(g) of the policy, coverage does not apply to:

> 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured. . . .
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . that is owned or operated by or renter or loaned to any insured.
> This exclusion does not apply to: . . . (3) Parking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured . . . .

On July 7, 2010, attorney Howard Newman, who had been retained to represent Dragonetti and Paolino, e-mailed the retail broker for the Western Heritage policy, advising the broker that a pre-suit claim had been made by the Battocchio estate. On July 12, 2010, the retail broker forwarded to Western Heritage certain documents received from Mr. Newman, including a notice of occurrence/claim, a copy of the police report from the accident, a copy of Battocchio's death certificate, and a copy of a letter from Mr. Newman to the Battocchio estate indicating that he represented Dragonetti and Paolino. Claim notes prepared by Western Heritage's claims analyst confirm that Western Heritage first received notice of the claim on July 12, 2010, and indicate that the claim involved an "auto collision" between Battocchio and "Scotty Paoino [sic], Dragonetti Bros Dump Truck." The claim notes also state that it was the claim analyst's plan to call the insured the next day to "verify that [this] is [an] auto accident" and that "we do not have coverage." By letter dated July 12, 2010, Western Heritage notified Dragonetti that it had initiated its review of the claim.

3

On July 14, 2010, Dennis J. Curran, Western Heritage's claims analyst, unsuccessfully attempted to verify the facts of the claim. Mr. Curran contacted Dragonetti, but the Dragonetti employee handling the claim was out of the office until July 19, 2010. Mr. Curran also contacted Mr. Newman on July 14, but he was also out of the office. The parties dispute when Mr. Curran ultimately spoke to Mr. Newman. According to the plaintiffs, Mr. Newman called Mr. Curran back on July 16, 2010, and verified the facts of the accident. According to Western Heritage, Mr. Curran and Mr. Newman did not speak until July 29, 2010, at which point in time Mr. Newman verified facts relating to the accident, notified Mr. Curran that a notice of claim had been filed against the City, and indicated that he would forward the City's notice to Mr. Curran. The claim notes for July 29 indicate that Mr. Curran planned to "hold coverage analysis . . . until review [of the City's] tender and possibly [the] lawsuit." On or about August 9, 2010, Western Heritage received the Battocchio estate's claim that was made to the City. The Western Heritage claim notes reflect receipt of this information and indicate that it now had "enough info[rmation] to issue [a] denial of coverage [on the basis of the] auto exclusion."

On August 13, 2010, Western Heritage mailed a letter to Dragonetti denying coverage under the policy pursuant to the 'auto' exclusion contained in section I(2)(g) of the policy. The letter was not addressed to the City or Paolino. Additionally, in response to a fax sent by the City Law Department on August 12, 2010 requesting coverage as an additional insured under the policy, Western Heritage advised the City that the "policy excludes accidents involving motor vehicles that operate on roadways" and since Western Heritage "declined coverage to the Insured" it must "reject [the City's] tender of defense in this case." On August 2, 2011, Dragonetti's counsel forwarded a copy of the complaint filed in the Battocchio action to Western

Heritage. Western Heritage again denied coverage pursuant to the 'auto' exclusion on August 11, 2011. That letter was not sent to the City or Paolino.

Plaintiffs filed this action on August 20, 2013, seeking a declaration that the Western Heritage policy covers the claim. Following the completion of discovery, the parties cross-moved for summary judgment.

## DISCUSSION

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show[] that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003). "In deciding whether there is a genuine issue of material fact, [this Court] must interpret all ambiguities and draw all factual inferences in favor of the nonmoving party." Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006). The parties have cross-moved for summary judgment on the issue of whether plaintiffs are entitled to a defense and indemnity under the Western Heritage policy. The Court must, therefore, determine whether the 'auto' exclusion in the policy bars coverage for the underlying accident, and, if it does, whether Western Heritage properly disclaimed coverage to plaintiffs.

A. The 'Auto' Exclusion

Western Heritage has moved for summary judgment on the grounds that the 'auto' exclusion contained in section I(2)(g) of the policy unambiguously bars coverage for the underlying accident. Plaintiffs argue that the exclusion does not apply or, at a minimum, that it is ambiguous. The parties agree that but for the exclusion the policy would cover the accident.

The Court must first decide, as a threshold matter, whether the exclusion at issue is unambiguous as a matter of law. See Parks Real Estate Purchasing Grp. v. St. Paul Fire and

5

Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide.") (internal quotation marks and citation omitted). If the Court finds the provision in question to be unambiguous, it must then interpret it in light of its "plain and ordinary meaning." 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 119 (2d Cir. 2011) (quoting Essex Ins. Co. v. Laruccia Constr., Inc., 71 A.D.3d 818, 898 N.Y.S.2d 558, 559 (2d Dept. 2010)). And while plaintiffs "bear[] the burden of showing that an insurance coverage covers the loss," Western Heritage "bears the burden of showing that an exclusion applies to exempt it from covering a claim." MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011). Lastly, any doubts must be resolved in favor of the plaintiffs. Id.

The 'auto' exclusion contained in the first paragraph of section I(2)(g) of the policy bars coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by . . . any insured." The Court finds this language to be unambiguous, consistent with other courts that have concluded that similar automobile exclusions are "clear and unambiguous and allow[] no opportunity for construction as a question of fact." New Hampshire Ins. Co. v. Jefferson Ins. Co. of New York, 213 A.D.2d 325, 327, 330, 624 N.Y.S.2d 392, 394, 396 (1st Dept. 1995); see also Tudor Ins. Co. v. Golovunin, No. 07 CV 4792 (KAM), 2013 WL 5437025, at *6 (E.D.N.Y. Sept. 27, 2013) (automobile exclusion was unambiguous); U.S. Specialty Ins. Co. v. LeBeau, Inc., 847 F. Supp. 2d 500, 505 (W.D.N.Y. 2012) (same); Ruggerio v. Aetna Life & Cas. Co., 107 A.D.2d 744, 745, 484 N.Y.S.2d 106, 107 (2d Dept. 1985) (same). This portion of the 'auto' exclusion plainly precludes coverage for the underlying accident since the complaint in the Battocchio action alleges a bodily injury to Battocchio arising out of Paolino's operation of a dump truck. See

Tudor Ins. Co., 2013 WL 5437025, at *6 ("Because it is undisputed that the fatal car accident was the act giving rise to liability . . . the Auto Exclusion shields plaintiff from any obligation to defend or indemnify any person or entity in connection with the . . . accident."); U.S. Specialty Ins., 847 F. Supp. 2d at 505 ("It is well settled under New York law that the term 'arising out of' is afforded a broader meaning" and an auto exclusion "will extend to any injuries 'originating from, incident to, or having a connection with the use of the vehicle.'").

The second paragraph of the 'auto' exclusion further provides that:

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . that is owned or operated by or rented or loaned to any insured.

The parties dispute the effect of this paragraph. Western Heritage argues that it confirms the scope of the first paragraph of the exclusion: the exclusion applies "even if" the claim is pled as one of negligent hiring or supervision. Plaintiffs, on the other hand, argue that because this paragraph lists "finite types of claims" that are excluded, it narrows the scope of the exclusion only to those claims expressly referenced. Therefore, according to the plaintiffs, the 'auto' exclusion does not apply to the allegations in the Battocchio action that Dragonetti and the City were negligent in the performance of landscaping services, or, at a minimum, the exclusion is ambiguous. Plaintiffs are mistaken.

The second paragraph of the 'auto' exclusion unambiguously clarifies the breadth of the exclusion, it does not limit it. The meaning of the phrase "even if," as defined in the Oxford English Dictionary, is "despite the possibility that" or "no matter whether," and accordingly, the second paragraph provides that the 'auto' exclusion applies regardless of the theory of negligence that is alleged. This interpretation of the exclusion is bolstered by the fact that the

7

'auto' exclusion does indicate, in the third paragraph, what circumstances the "exclusion does not apply to." Where, as here, the policy carves out certain circumstances from the coverage exclusion, those carve-outs imply the omission of other carve-outs from the exclusion, such as the one suggested by plaintiffs. See In re New York City Asbestos Litig., 41 A.D.3d 299, 302, 838 N.Y.S.2d 76, 80 (1st Dept. 2007).

The 'auto' exclusion as a whole unambiguously precludes coverage for the underlying accident. It is well established that "it is the act giving rise to liability that is determinative, not the theories of liability alleged. . . . the mere fact that [an insured] could be found liable on [an] independent theory of recovery does not alter the operative act giving rise to the accident, namely, the use of [an insured's] vehicle." U.S. Fire Ins. Co. v. New York Marine & Gen. Ins. Co., 268 A.D.2d 19, 21, 706 N.Y.S.2d 377, 378 (1st Dept. 2000); see also New Hampshire Ins., 213 A.D.2d at 330, 624 N.Y.S.2d at 395 ("whatever theory of liability the resourceful attorney may fashion from the circumstances of a client struck by an automobile, it remains that the immediate and efficient cause of the injury is, in fact, the automobile"). Here, regardless of whether the theory of liability in the underlying accident is negligence, negligent hiring or supervision, or negligence in the provision of landscaping services, the act giving rise to liability – an automobile accident – is the same. Therefore, as a matter of law, this Court concludes that the 'auto' exclusion contained in section I(2)(g) of the policy bars coverage for the Battocchio accident.

B.   Disclaimer of Coverage

Having concluded that the 'auto' exclusion bars coverage under the policy, this Court must consider whether Western Heritage effectively disclaimed coverage. Pursuant to New York Insurance Law § 3420(d), an insurer "is obligated to give written notice of a disclaimer of

coverage 'as soon as is reasonably possible,' measured from the time that the insurer has sufficient information to disclaim coverage in good faith." Webster ex rel. Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 216 (2d Cir. 2004) (quoting N.Y. Ins. L. § 3420(d)) (internal citation omitted). A "delay occasioned by a 'reasonably prompt, thorough, and diligent investigation of the claim' does not render the insurer's disclaimer untimely, because an investigation is often necessary to determine whether there is any basis for disclaiming coverage." Id. at 216-17 (quoting In re Prudential Prop. & Cas. Ins. Co., 213 A.D.2d 408, 408, 623 N.Y.S.2d 336, 336 (2d Dept. 1995)); see also First Fin. Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 69, 801 N.E.2d 835, 839 (2003) (noting that good-faith investigation into a claim often excuses delay in providing disclaimer). But an insurer that fails, without good reason, "to provide the insured with timely notice of its disclaimer or denial of coverage on the basis of a policy exclusion . . . will be estopped from disclaiming liability or denying coverage." Moore v. Ewing, 9 A.D.3d 484, 487, 781 N.Y.S.2d 51, 54 (2d Dept. 2004). "While 'normally the question whether a notice of disclaimer of liability or denial of coverage has been sent as soon as is reasonably possible is a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay,' in the 'exceptional case' this question may be decided without the benefit of a jury." U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004) (quoting Hartford Ins. Co. v. Nassau Cnty., 46 N.Y.2d 1028, 1030, 389 N.E.2d 1061, 1062-63 (1979)).

Based upon the record, the Court cannot conclude that this is an "exceptional case" where the timeliness of Western Heritage's disclaimer may be decided as a matter of law. First, there is a material dispute of fact as to the timeliness of the disclaimer to Dragonetti. Western Heritage was first notified of a potential claim on July 12, 2010, and it sent a denial letter to Dragonetti on

9

August 13, 2010. Plaintiffs argue that the 32-day period between when Western Heritage learned of the claim and denied it is an unreasonable delay because the basis for denial was obvious on July 12, 2010. Western Heritage, however, argues that it needed time to verify the basis for issuing a denial, and disclaimed coverage shortly after verifying the facts of the claim. Plaintiffs counter that if Western Heritage needed to verify facts, those facts were verified by Mr. Newman on July 16, 2010. Western Heritage, on the other hands, denies that the July 16th call took place. This is not a record suitable for summary judgment. There is a material dispute of fact as to whether Western Heritage was in a position to deny coverage on the basis of the information it received on July 12th, or whether it needed to conduct an investigation to verify the facts of the underlying accident. There is also a dispute as to whether the July 16th call took place, and, if it did, whether the resulting 28-day delay in denying coverage was unreasonable. And even if Western Heritage had sufficient facts to deny coverage on July 12th, the New York Court of Appeals has "declined to provide a 'fixed yardstick' against which to measure reasonableness of a delay in disclaiming coverage," Cont'l Cas. Co. v. Stradford, 11 N.Y.3d 443, 449, 900 N.E.2d 144, 148 (2008), and this Court will not deem a 32-day delay unreasonable as a matter of law.

Second, for similar reasons the Court cannot conclude as a matter of law that Western Heritage failed to disclaim coverage to Paolino as required by section 3420(d). Plaintiffs argue that Western Heritage never sent a disclaimer of coverage to Paolino. Western Heritage argues that it was relieved of this obligation because Paolino never provided it with a notice of a claim. Under New York law, an insurer's obligation to cover a loss is not triggered unless the named insured gives timely notice of the loss. See U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F. Supp. 2d 348, 360 (E.D.N.Y. 2006); Travelers Ins. Co. v. Volmar Const. Co., 300 A.D.2d 40,

44, 752 N.Y.S.2d 286, 289-90 (1st Dept. 2002). This duty extends to "additional insureds" under any policy, and generally notice by one insured will not be imputed as notice by another. See Volmar Const., 300 A.D.2d at 44, 752 N.Y.S.2d at 289; City of New York v. Lexington Ins. Co., 735 F. Supp. 2d 99, 111-12 (S.D.N.Y. 2010). An insured's failure to provide notice relieves an insurer of its obligation "to send a separate notice of disclaimer." Webster, 368 F.3d at 217. There are, however, situations in which timely notice by one insured may be deemed notice by another insured. "Where two or more insureds are defendants in the same action, notice of the occurrence or of the lawsuit provided by one insured will be deemed notice on behalf of both insureds only where the two parties are united in interest or where there is no adversity between them." Lexington Ins. Co., 735 F. Supp. 2d at 112 (quoting 23-08-18 Jackson Realty Associates v. Nationwide Mut. Ins. Co., 53 A.D.3d 541, 543, 863 N.Y.S.2d 35, 37 (2d Dept. 2008)). Here, while Paolino did not provide separate notice of a claim, as an employee of Dragonetti he is united in interest with his employer (and represented by the same counsel), and therefore Dragonetti's notice to Western Heritage is deemed notice on behalf of both plaintiffs. See Lexington Ins., 735 F. Supp. 2d at 112 (employee was united in interest with his employer); Amaya v. Garden City Irrigation, Inc., 645 F.Supp.2d 116, 122 (E.D.N.Y.2009) ("The most frequently cited relationship creating a unity of interest is vicarious liability, such as between an employer and employee or a corporation and its agents.").

Plaintiffs argue, then, that since Western Heritage did not send a separate disclaimer to Paolino, it is estopped from now refusing coverage. Not quite. In Zappone v. Home Ins. Co., 55 N.Y.2d 131, 137, 432 N.E.2d 783, 786 (1982), the Court of Appeals stated that literal interpretation of section 3420(d) is inappropriate "when to do so will occasion great inconvenience, or produce inequality, injustice or absurdity." The position advocated by

11

plaintiffs would produce such an inequitable or absurd result. If Paolino is not required to provide separate notice to Western Heritage because he is unified in interest with Dragonetti, then Western Heritage is likewise not required to provide a separate disclaimer to Paolino when it has disclaimed coverage to Dragonetti. See Excelsior Ins. Co. v. Antretter Contracting Corp., 262 A.D.2d 124, 127-28, 693 N.Y.S.2d 100, 104 (1st Dept. 1999) ("Failure to serve a formal notice on the nominal party in interest does not render ineffective the denial of coverage where, under the circumstances, the party who received the notice was expected to forward it to the nominal party and had undertaken to protect the nominal party's rights."). In short, Paolino's claim lives and dies with Dragonetti: if a jury determines that Western Heritage is estopped from disclaiming coverage to Dragonetti, that finding would apply to Paolino as well.

Third, there is also a material dispute of fact as to whether Western Heritage's disclaimer to the City was timely. As a preliminary matter, Western Heritage argues that the City is not an additional insured under the policy, and therefore it was not required to disclaim coverage to the City. Western Heritage is incorrect in this regard. Dragonetti agreed in writing to make the City an additional insured under the policy, and pursuant to the "Additional Insured" endorsement appended to the policy, the policy covers additional insureds for vicarious liability they have for acts of the insured. Western Heritage argues that since the underlying action is still pending it is not possible to know now whether the City will be held liable on any theory besides a vicarious liability theory. But under New York law, "[i]f a complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." BP Air Conditioning Corp. v. One Beacon Ins. Grp., 8 N.Y.3d 708, 714, 871 N.E.2d 1128, 1131 (2007) (quoting Technicon Electronics Corp. v. Am. Home Assur. Co., 74 N.Y.2d 66, 73, 542 N.E.2d 1048, 1050 (1989)); see also City of New York v. New York Marine & Gen.

Ins. Co., 122 A.D.3d 513 (1st Dept. 2014) ("Since these allegations are potentially covered by the [] policy issued to [the insured], in which the City was named as an additional insured 'only with respect to operations performed by or on behalf of [the insured] for which the [City] has issued a permit,' [the insurer] is obligated to defend the City in the underlying action."). Accordingly, the Court concludes that, at this juncture, Western Heritage was required to provide timely notice of disclaimer to the City.

There is, however, the question of whether that disclaimer to the City was timely. Plaintiffs argue that Western Heritage learned of the City's tender on July 16, 2010, and waited 28 days to disclaim coverage. Western Heritage argues that it did not learn of the City's tender until July 29, 2010, and did not receive documentation of the City's claim until August 9, 2010, and therefore the disclaimer sent on August 13, 2010, was not untimely as a matter of law. As there is a material dispute of fact as to when Western Heritage learned of the City's tender and had sufficient information to issue a disclaimer, and whether the time it took to disclaim coverage was reasonable, summary judgment on this issue is denied.

Lastly, plaintiffs also argue that the disclaimer that was sent to the City was not sufficiently specific, as required by section 3420(d). In order to comply with section 3420(d), "the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated." Gen. Acc. Ins. Grp. v. Cirucci, 46 N.Y.2d 862, 864, 387 N.E.2d 223, 225 (1979). Here, the disclaimer sent to the City stated:

> This policy excludes accidents involving motor vehicles that operate on roadways. We have declined coverage to the Insured and thus respectfully reject your tender of defense in this case.

This disclaimer is sufficiently specific so as to comply with the requirements of section 3420(d) as it apprised the City that Western Heritage was disclaiming coverage on the grounds of the

'auto' exclusion. See QBE Ins. Corp. v. Jinx-Proof Inc., 22 N.Y.3d 1105, 1107, 983 N.Y.S.2d 465, 466 (2014). Plaintiffs identify no support for their position that Western Heritage needed to quote the terms of the policy to the City. As a matter of law, the disclaimer is sufficiently specific.

C. Excess Insurance

As a final matter, Western Heritage moves for summary judgment on the grounds that its coverage should be treated only as excess insurance. The Court will not resolve this issue at this time. There remains an open factual question as to whether Western Heritage timely disclaimed coverage to the plaintiffs. If it did, there is no coverage under the policy and this issue is moot. And even if Western Heritage failed to timely disclaim coverage, this Court will not adjudicate the allocation of costs among insurers until all other insurers are parties to the action. See Turner Const. Co. v. Kemper Ins. Co., 341 F. App'x 684, 687 (2d Cir. 2009) (citing BP Air Conditioning Corp., 8 N.Y.3d at 716).

In sum, for the foregoing reasons, Western Heritage's motion for summary judgment is granted in part, and plaintiff's cross-motion for summary judgment is denied.

SO ORDERED.

Dated: Brooklyn, New York
March 6, 2015

/s/ Judge Raymond J. Dearie
───────────────────────────
RAYMOND J. DEARIE
United States District Judge